FIREMAN'S FUND INS. CO. v.
MULROY et al.

MULROY v. FIREMAN'S FUND
INS. CO. et al.

No. 12755.

United States Court of Appeals
Ninth Circuit.

Jan. 2, 1952.

Rehearing Denied Feb. 1, 1952.

Bogle, Bogle & Gates and Edw. S. Franklin, all of Seattle, Wash., for appellant Fireman's Fund Ins. Co.

James G. Mulroy, Seattle, Wash., for appellant Mulroy.

J. Charles Dennis, U. S. Atty., Seattle, Wash., Holmes Baldridge, Asst. Atty. Gen., Onan A. Hydrick and David Orlikoff, Attys. Dept. of Just., all of Washington, D. C., for appellee U. S. A.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

MATHEWS, Circuit Judge.

Oscar Carl Johnson was a member of the crew of the steamship Capillo during its last voyage—a voyage which began at Westport, Oregon, on October 15, 1941,[1] and ended at Manila, Philippine Islands, on November 28, 1941. The Capillo was an American merchant vessel, was owned by the United State Maritime Commission, was chartered by the Commission to American Mail Line, Limited, a corporation, hereafter called American Mail, and was operated by American Mail at the direction and under the control of the Commission. Before the Capillo reached Manila, Johnson became ill. He never recovered from that illness. On November 28, 1941, when the Capillo reached Manila, Johnson was taken ashore and placed in a hospital in Manila. He never returned to the Capillo. The Capillo never left Manila.

On December 7, 1941, war began between the United States and Japan. The Japanese bombed and destroyed the Capillo on December 29, 1941, interned Johnson and other members of the Capillo's crew on January 6, 1942, and detained them until Johnson's death. Johnson's detention was in

1. Articles for the Capillo's last voyage were opened on October 10, 1941.

hospitals in or near Manila. The last of these was the Santa Catalina Hospital at the Santo Tomas Internment Camp. There, on August 6, 1943, Johnson died intestate, leaving a daughter—his only child—Betty Jane Grant, wife of Robert H. Grant.

Johnson's administrator, James G. Mulroy, a resident of Seattle, Washington, filed in the United States District Court for the Western District of Washington a libel in personam on April 3, 1946, and an amended libel in personam, hereafter called the libel, on September 29, 1947, against Fireman's Fund Insurance Company, a corporation, hereafter called Fireman's Fund, and the United States to recover of Fireman's Fund or the United States for Betty Jane Grant, as insurance on Johnson's life, $5,000, with interest from August 8, 1943,[2] and costs. Fireman's Fund and the United States answered the libel, a trial was had, and on August 31, 1950, a decree was entered, ordering, adjudging and decreeing that Mulroy recover of Fireman's Fund $5,000, with interest from August 31, 1950, and costs,[3] and that the libel be dismissed as to the United States. Fireman's Fund and Mulroy have appealed.

Mulroy's claim against Fireman's Fund was based on Policy No. 6622 issued by Fireman's Fund to American Mail on October 17, 1941. Policy No. 6622 provided:

"[Fireman's Fund][4] * * * by this policy of insurance does insure [American Mail][5] as follows:

"In consideration of [American Mail] promising to pay to [Fireman's Fund] the sum of seven hundred eighty dollars ($780) as a premium at and after the rate of ¾ per cent for such insurance [Fireman's Fund] takes upon itself the burden of such insurance in the amount of one hundred and four thousand dollars ($104,000) and promises and agrees with [American Mail] in all respects truly to perform and fulfill the contract contained in this policy. And it is hereby agreed and declared that the said insurance shall be and is an insurance upon protection and indemnity risks in respect to liability of [American Mail] for claims for loss of life, injury or disability as per slip attached,[6] and is warranted free of all other claims of and in the good steamer called the 'Capillo' or by whatsoever other name or names the said ship is or shall be named or called, lost or not lost, at and from Columbia River port or ports (sailing on or about October 15, 1941) to Shanghai,[7] Hongkong, Philippine Islands port or ports, while there and return to Columbia River and/or Puget Sound port and/or ports or until the expiration of one hundred days (100) from moment vessel sails from first Columbia River port, whichever may occur first, or held covered. * * *

"This policy covers war risk only as follows and is warranted free of all other claims.

"This insurance covers only contractual liability of [American Mail] for claims for loss of life or injury to or disability of licensed personnel,[8] not exceeding eight (8) and unlicensed personnel,[9] not exceeding thirty-two (32), as result of capture, seizure, destruction or damage by men of war, piracy, takings at sea, arrests, restraints and detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities, whether be-

2. Incorrectly alleged by Mulroy to be the date of Johnson's death.

3. The decree did not mention Betty Jane Grant.

4. In Policy No. 6622, Fireman's Fund was referred to as "Fireman's Fund Insurance Company," as "the said Company," as "the assurer" and as "these underwriters."

5. In Policy No. 6622, American Mail was referred to as "American Mail Line, Ltd.," as "the said person or persons effecting this policy," as "the assured" and as "the assured, their executors and administrators."

6. The "slip attached" was a part of Policy No. 6622, being the second page thereof.

7. By an endorsement attached to and made a part of Policy No. 6622 on November 5, 1941, the words "via Honolulu" were inserted before the words "to Hongkong."

8. Meaning, we, suppose, the Capillo's master and officers.

9. Meaning, we suppose, the Capillo's crew, including Johnson.

fore or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution or rebellion or insurrection, or civil strife arising therefrom, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. In no case shall liability of [Fireman's Fund] exceed $5,000 each in respect to licensed personnel nor $2,000 each in respect to unlicensed personnel.[10] * * *

"[Fireman's Fund] will pay, in case of loss, an amount to be determined by applying the percentage shown below to the amount for which the master, officer or member of the crew is insured, as follows:

"Life.....................100% * * *

"Loss, if any, subject however to all the terms and conditions of this policy, is payable to [American Mail] for distribution by it in accordance with agreement made with each seaman concerned."

From these provisions, it is clear that, if any insurance on Johnson's life was payable under Policy No. 6622,[11] such insurance was payable by Fireman's Fund to American Mail and was not payable by Fireman's Fund to Mulroy. Hence Mulroy was not entitled to recover such insurance of Fireman's Fund. Hence the libel should have been dismissed as to Fireman's Fund.

Mulroy's claim against the United States was based on a Second Seamen's War Risk Policy[12] alleged by Mulroy to have covered Johnson. Actually, no Second Seamen's War Risk Policy was ever issued or authorized to be issued as to any voyage the articles for which were opened before 12:01 A.M. of March 15, 1943.[13] Articles for the Capillo's last voyage—the voyage during which Johnson was a member of the Capillo's crew—were opened on October 10, 1941. Hence Johnson was not covered by any Second Seamen's War Risk Policy. Hence the libel was properly dismissed as to the United States.

Decree reversed as to Fireman's Fund and affirmed as to the United States.

10. The endorsement of November 5, 1941, provided: "In consideration of the payment of an additional premium of $720, it is hereby understood and agreed that effective October 18, 1941, the amount insured in respect to unlicensed personnel is increased from $2,000 each to $5,000 each and the total amount insured under policy to which this endorsement is attached is increased from $104,000 to $2,000,000."

11. Whether any such insurance was payable under Policy No. 6622 we need not and do not decide.

12. See 46 C.F.R., 1943 Supp,. pp. 2125–2136.

13. See 46 C.F.R., 1943 Supp., p. 2126.